Good morning. My name is Mark Days. I represent Mr. Hayes. An MRI performed on Mr. Hayes revealed that he suffers from brain damage. He has lesions in his brain. The lesions had their onset when Mr. Hayes was six years old. The lesions are the cause of his inability to read and write, memory impairment, and cognitive disorder. The lesions are located in the areas of the brain, the bilateral frontal lobes, which play a significant role in memory formation and can interfere with the ability to lay down proper memory traces. He has striking difficulty comprehending dates. He has difficulty recalling the months in order and has a peculiar, convoluted, and confusing strategy for trying to remember dates. That didn't prevent him from working steadily for three years, did it? No, it did not. And it didn't prevent him from initially filing an application for Social Security benefits and thereafter informing the Social Security Administration that he had gone back to work. That was in 1999, correct? No, it did not. The 1992 application was... That was the original one. That's correct. That was sent through the mail. And during the time from 1992 until 1999, Mr. Hayes had a payee who was his first wife. They divorced during the month that... during the time that the 99, in August of 99, during that time when the form that the court just referred to was submitted, he was changing his payee as well. I don't believe that the government contends that Mr. Hayes can read or write as they acknowledge in their brief... Right. And that came out at trial. The trial court allowed the jury to learn that he couldn't read or write. The 1992 application, wasn't there testimony that even if he'd mailed it in, he would have been told on the phone about the procedures to follow if he did go back to work? Well, my understanding from the testimony was that that dealt with the 99 form sent in in August and also the January form sent in in... I don't believe it was sent in. I think it was actually filled out at the Social Security office in Oklahoma when Mr. Hayes moved. But Ms. Mashburn testified that there wouldn't have been any reason to go over the form with Mr. Hayes of that kind because, and I really didn't understand the testimony, because his nine months of trial work had not expired. But nonetheless, in the trial, there was absolutely no testimony identifying any individual that went over any reporting requirements with Mr. Hayes, which from our perspective means that one would have to speculate that that happened in the first place. But Mr. Hayes, according to Dr. Hussabian's review of his school records and his medical records, he was placed in special ed at the age of nine. He dropped out of school in the 10th grade. He's been diagnosed with PTSD and a panic disorder with functionally impairing symptoms. The cause of the panic disorder and the PTSD were due to years of extensive abuse that he experienced as a child, physical and emotional abuse. Counsel, what does all of this proffer of proof go to? I had understood that the reason the district court excluded this was the district court didn't believe there was anything that Dr. Hussabian could testify to that would go to the question of his ability to form the intent. Well, the reason why I'm going into this right now is because it's a critical portion, we believe, of the defense, whether or not he knew he had a duty to report his return to work. Well, the government conceded that your client couldn't read or write, and it looks like he had a host of other medical conditions. But the fact that people can't read or write or that they don't have medical conditions doesn't mean that they don't know that they have an obligation not to accept Social Security when they're working full-time as an electrician. Well, that's all the more reason why the evidence should not have been excluded. But how did you – I don't see how the dots were connected. In other words, wasn't his report, the doctor's report, fairly vague and ambiguous? And he talked maybe about moderate deficiencies as far as his cognitive abilities are concerned. And so I think that was part of the judge's thinking, was that this report really wasn't conclusive about anything. Well, from our read of the report, it appeared very clear that the lesions are located in an area of the brain, which, according to the doctor, plays a significant role in memory formation. He diagnosed a cognitive disorder, and it's significant because we're dealing with reporting requirements, and this individual can't even comprehend dates, the concept of dates. So what would have been your argument? Let's assume the doctor would have testified. How would you have presented that to the jury? What would have been the inference you would have wanted the jury to draw? Well, simply that he has lesions. Just like the lesions cause him an inability to read and write, the lesions can also affect his memory formation. It would be left to the jury to decide whether or not his memory impairment actually caused him not to know that he had a duty to report, or not to learn, or remember. So that would have been what you would want the jury to take away from the testimony? Absolutely. The jury wouldn't have to find that he didn't remember, or didn't learn, or didn't know, but it would give them a reason to if they chose to find that. You also say that this prevented your client from presenting a defense in the case, but he was able to still testify, correct? Well, that was the problem. When the court ruled that that information about his cognitive disorder and memory impairment couldn't come out, then we were forced to make a decision whether or not to allow Mr. Hayes to testify, be subjected to cross-examination, be asked questions dealing with dates, who he worked for, and without the context that he has an impaired memory, difficulty comprehending certain information, responding to questions. So it wouldn't have given the jury a full context of who he is and why he may be answering questions the way that he'd be answering the questions. They may assume that he was lying because there were inconsistencies, when in fact it was due to his impairment that his testimony may not have been as accurate as it probably could have been if he were to testify. So it impacted even the decision for him to testify, let alone him being able to convey to the jury his defense, which was that he didn't know he had a duty to report. And that goes towards leading into the question of whether or not this is even material in the first place, his failure to disclose the fact that he wasn't working. He returned to work in 1999. In 2002, there was an investigation that was conducted by the Social Security Administration in March, beginning in March. They knew the beginning of March of 2002 that he had worked from 99, except for two months, on through 2002. They knew he earned $15,000 in 99. They knew he earned $40,000 in 99, or excuse me, in 2000. They knew he earned $90,000 in 2001, and they knew he earned three months of income from January to March of 2002, and yet they continued to pay him benefits. The reason that they knew he was working was because he had used his Social Security number when he returned to work, as well as the fact that they contacted his employers. So they absolutely knew he was returning to work when they paid each, and the amount of work, three years of work roughly, when they paid each and every one of the checks which are the subject of the indictment. So we don't believe that this fact that he was working under these conditions was material because the decision maker knew he was working, and it wasn't material to the decision under the Kunze decision, which is cited in our brief. And so you're saying the government knew the extent of his employment and the extent of the wages that he was being paid? Yes, yes, that is our position, and I believe the government states that in their brief at page 38. They admit that they became aware of his employment and the extent of it up to 2002. The issue is the subsequent work, and presumably after the investigation. So I don't believe it's in dispute that they knew he was working and how much he was making up to 2002. Well, the indictment, the first check that he supposedly received while he was working after that was in September 2002, correct? The first check which is the subject of the indictment is July the 3rd, 2002. 2002, so after this investigation, this first investigation, correct? Well, it was actually during the investigation because the first, there's a letter, there's two letters actually that are, excerpt of record 350 and 352, which are dated March 18th. They go to two employers. Then there are subsequent letters that are sent, even one in August, which I think is also in that same page range, 350 to 354, where they send another letter to another employer in August. This would have been after the first payment on July the 3rd, 2002. But Ms. Mashburn testified that there was a process that occurs when they're investigating, and that process begins with pressing D12 and finding out who the employers are and the wages that are earned, and then contacting those employers. So by the beginning of the investigation, according to that testimony, they would have known who he worked for and the wages he earned as early as March of 2012. But he still has the obligation to report it, doesn't he? That's what this is about. Well, he, according to Social Security, even when people don't report, that doesn't necessarily mean there's criminal conduct. There can be mistakes that are made, and then they don't attribute it to the defendant. And that was the testimony of Ms. Mashburn. And they would enter into a repayment agreement. But the underlying one of the issues that we raise is whether or not he knew he had a duty to report, and if it was material. So here we have an investigation that occurs in 2002. He enters into a repayment agreement for $100. He continues to see checks, and he's supposed to believe that there's something that he's done is wrong? He receives the checks for another 18 months. The evidence that they cite in support of the position that there is sufficient evidence is the 92 application the court referred to and the 99 form, the use of his son's Social Security number prior to the time period that's relevant here, and also the claim that he hid from Social Security his income from 99 to 2002, $200,000 worth of income. Well, I addressed the first two issues. He sent in his 92 application through the mail. There's no evidence that anybody read any reporting requirements to him. The 99 form, same thing. A claims rep went over the form with him. These sound like arguments that would be argued to the jury. You had a jury trial, didn't you? Yes, we did. And you were able to make these arguments to the jury? Yes. Well, what is the strongest legal argument? That it's not material. That it is not material, the fact that Social Security investigated him, contacted his employers for the purpose, in the letter it says, for the purpose of determining whether or not he's eligible for benefits, and then continued to pay him with knowledge that he was working for roughly three years, two and a half years. So how is the fact that they learned that he's working when they knew he was working material? They knew that when they made the decision to continue paying him and they entered into that $100 repayment agreement with him. So how is a person that ñ so that's one issue. The second issue is simply that he didn't have an opportunity to present his full defense, which is that he suffers from an impaired memory. And there was a witness you wanted to put on. Well, we put on Dr. Osepian to testify, but he was precluded from going into providing the jury that information. And that goes directly towards whether or not he knew he was concealing a material fact, assuming that the fact's material in the first place. But also there was the 404B evidence that we cite in our brief as well, which was really ñ it didn't prove any element from the government's perspective. We think that this is actually 404A propensity evidence. Because if Mr. Hayes knew concealing his return to work was material, or if he knew that he was required to do that, why would he use his number during the time period in question? Why would he use his son's Social Security number? Well, that was improper. We don't dispute that that was improper, but it explains why the jury would convict, basically convicting him for something that occurred in the past and wasn't the question in front of them. And given the light ñ really, the weak case presented by the government, we believe that that evidence had a huge impact, a very prejudicial effect. Okay. Thank you. I think we understand your argument, and your time has expired. Thank you. Good morning. Deanna Martinez on behalf of the United States. I'd first like to point out to the Court a fairly new case that I submitted a 28-J letter on, and it goes to the standard that the Court of Appeal would use in evaluating a sufficiency of the evidence claim, and that's U.S. v. Nevels and the site ñ I apologize ñ 598 Fed Third, 1158. And that is where this Court just simply clarified the Supreme Court standard in Jackson v. Virginia that when the Court of Appeal is looking at a sufficiency of the evidence claim, that it's a two-step process where the Court first considers the evidence in the light most favorable to the government, and then the Court goes on to determine whether the evidence viewed in that light is adequate so that any rational trier of fact could find the essential elements beyond a reasonable doubt. So I think it's important to note at the outset that this case clarifies the Supreme Court's previous standard and actually overrules U.S. v. Vasquez-Chan that both parties cited in their opening brief. With that, I'll go right to what seems to be the heart of Mr. Hayes' appeal, and that is that concealing his employment wasn't a material fact. The employment wasn't a material fact because somehow the Social Security Administration knew that information. I think there's a big difference between having access to information and knowing, and as the Court has pointed out, because the Social Security Administration may have access to information, does not negate the recipient of disability's obligation to report employment. It would be similar to the IRS. The IRS knows that I earn wages, but that doesn't negate my requirement to file a tax return. As Ms. Mashburn testified, the Administration relies on people and their honest reporting because it's a huge governmental agency. If the Social Security Administration had to police everybody and check to see who was working and who wasn't, the Administration couldn't operate. But they knew he was working, and they continued to pay him. Well, what they knew, if we actually look at the record, when the first investigation began in March of 2002, they requested information from his employers for 1999 and 2000. If we look at the record at what they actually received back, they received information for those time periods. The record doesn't reflect and the government does not concede that in 2002, the Social Security Administration knew the full extent of his employment or his wages. If we look at the actual record, the forms that the Social Security Administration received back in March of 2002 and June of 2002 actually showed he stopped working by, I believe, March of 2001. So the fact that they had some information led them and then believed that he had stopped working, based on the forms they received from his employers. That is why the disability benefits continued. And it wasn't until they went further into the investigation and finally, by September of 2003, they did a more thorough investigation. Granted, the government's not perfect. And maybe they could have gone back earlier and done a more detailed investigation. But the fact of the matter is it does not negate Mr. Hayes' obligation to honestly report his employment. How was this issue raised in the district court? The materiality? The materiality, yeah. I believe it was raised in the motion for a new trial, in the Rule 29 motion. I don't believe it was raised in the form of a motion to eliminate. I believe it was post-trial, post-trial motions. What about the doctor's testimony? Wouldn't that have gone to or wouldn't that have helped the defense in this case show the jury that, in fact, he didn't have the requisite intent, the specific intent to not report his income? Your Honor, the doctor did testify. And if we look at his testimony, he went into quite a bit of detail about, as Mr. Days was mentioning, the lesions that Mr. Hayes suffered from. He went into the onset of and how long Mr. Hayes may have not been able to read or write. He actually did discuss Mr. Hayes' ability or inability to distinguish, for lack of a better word, I'm paraphrasing, between dates. So the doctor did testify, to a large extent, a lot of the information that Mr. Days talked about. What he was not able to testify about, what the trial judge found, was that any specific diagnosis of a cognitive disorder wasn't supported by his report and actually was based in large part on Mr. Hayes' statements to the doctor, which allowing that in would amount to the admission of inadmissible hearsay. Mr. Hayes certainly could have testified, just like he talked to the doctor. He could have got on the stand and testified about his troubles remembering and things like that and been subject to cross-examination. But instead, the defense wanted to have Mr. Hayes, I'm sorry, the doctor do that, which would have been inadmissible hearsay. The trial court also noted the fact that this examination occurred in March of 2008, and as I stated, in large part was based on statements made by Mr. Hayes to the doctor. And so all in all, the trial judge, we believe, correctly found that allowing the doctor to go further than he did was not supported by his report and therefore would not have been reliable evidence and was therefore properly excluded under Rule 702. In addition, the doctor did testify before the jury that based on his examination of Mr. Hayes, nothing that he determined or nothing that he noted would have affected Mr. Hayes' ability to tell right from wrong. So I don't think the defense was precluded from arguing their defense or presenting their defense that somehow Mr. Hayes had some limitations. That was before the jury. We also need to remember, however, that Ms. Mashburn testified that when he came into her office, he appeared to be very capable, and so her testimony actually would have gave the jury another view. In addition, the fact that we have an individual that over a three-year period made over $200,000 tends to go against the argument that he didn't have the ability to understand the regulations or his requirements. How would he have known about that? He wasn't told. That's the argument of counsel, that he never was told by anyone. He couldn't read it on the form, obviously. Right. Well, the evidence at trial was that this requirement was in his application, and that was the government's position, first of all, that he knew about the requirement because he applied for the benefits, and that was solidified by the evidence that he actually did comply with the requirement in 1999. So he knew about it in 1999 to the extent that he told Social Security that he went back to work, and then a few months later told Social Security that he stopped working. So the fact that he knew in one year and then suddenly forgot the next year, just I'm not sure was an argument that the jury was willing to accept, and we don't believe that that would be grounds for reversal of this decision. It's certainly within the realm of a rational try or a fact to determine that someone who actually complies with a requirement knows about that requirement. Let's see. I'll just close by saying that, as the Court noted, that most of these arguments are arguments that were made to the jury and were before the jury who heard the evidence and was there to determine credibility, and they found they didn't believe Mr. Hay's argument. And so we believe that the— What about the 404B? One last question about that. The use of the Social Security card? Yes. Your Honor, that goes straight to Mr. Hay's knowledge and, again, cuts against the argument that he doesn't understand about the Social Security requirements. He used somebody else's Social Security number, and when he was precluded from doing that, he resorted to another means, and that is he stopped reporting his employment. So it goes, we believe, straight to his knowledge that, if I work and Social Security knows about it, I'm not entitled, in addition to that, to disability benefits. And that, we think—we often tell our juries, you don't have to leave your common sense at the door when you deliberate, and we believe that's what the jury did in this case. Again, someone who earns over $200,000 over a three-year period knows that, in addition to that, they are not entitled to over $60,000 in disability. He got a sentence of what? Four months. Four months. And then also restitution. Are there further questions? Thank you. Thank you. I can't—does he have—how much time does he have? He's over? All right. Are there any questions of the appellant? No? I don't believe so. Thank you. The case just argued is submitted for decision. We'll hear the—
judges: Gonzalez, Schroeder, Bybee